CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 JAN 13  AM 8:59

DEPUTY CLERK_____

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **VARONA ANNETTE HAMEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:14-CV-849-Y-BL** |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge** |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Varona Hamel ("Hamel") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for a period of supplemental security income ("SSI") under Title XVI of the Social Security Act. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

## I.   BACKGROUND

Hamel claims that she became disabled on January 1, 2010, due to back and hip pain. (Tr. 171). Hamel protectively filed an application for SSI on January 19, 2012. (Tr. 153). Hamel's application was initially denied on June 4, 2012, and on reconsideration on August 9, 2012. (Tr. 24). Subsequently, Hamel requested and received a hearing before Administrative Law Judge Darren Hamner ("ALJ") on July 10, 2013. (Tr. 24). On July 26, 2013, the ALJ issued an

1

unfavorable decision finding that Hamel was not disabled and was capable of performing work existing in significant numbers in the national economy. (Tr. 21-35).

The ALJ followed the sequential five-step analysis to arrive at this decision.[1] First, the ALJ determined that Hamel had not engaged in substantial gainful activity since her application date, January 4, 2012. (Tr. 26). Next, the ALJ determined that Hamel suffered from degenerative disc disease of the lumbar spine, a severe impairment. (Tr. 26). Third, the ALJ surmised that Hamel's severe impairment did not equal the severity of the impairments in the listings.[2] (Tr. 27). Next, the ALJ determined that Hamel had the residual functional capacity ("RFC") for sedentary work activity modified by her need to alternate between sitting and standing frequently; occasionally stooping, kneeling, crouching, and crawling; but never climbing ladders, ropes, or scaffolds. (Tr. 27). The ALJ opined that Hamel cannot work around hazards such as unprotected heights or dangerous, moving machinery. (Tr. 27). Next, the ALJ concluded that Hamel could return to her past relevant work as a bookkeeper. (Tr. 29). Nevertheless, the ALJ conducted a Step 5 analysis and found that Hamel could perform work that existed in significant numbers in the national economy. (Tr. 29-30). Finally, the ALJ determined that Hamel was not disabled within the meaning of the Social Security Act. (Tr. 31).

The Appeals Council denied review on August 20, 2014. (Tr. 1). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

## II.   LEGAL STANDARD

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2012). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716,

718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## III.   ANALYSIS

Hamel raises two issues on appeal: (1) whether the ALJ properly weighed the medical evidence and (2) whether the ALJ erred in evaluating Hamel's credibility. (Doc. 12).

### A. The ALJ properly evaluated the medical evidence.

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination on the claimant), or non-examining sources (a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v.*

4

*Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Greenspan*, 38 F.3d at 237; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight." *Id.* The analysis should include: (1) the physician's length of treatment of the claimant, (2) the nature and extent of the treatment relationship, (3) the support of the physician's opinion afforded by the medical evidence of record, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physician, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

Even so, courts in the Northern District of Texas have held that "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3

(N.D. Tex. April 23, 2010) (emphasis added).[3] Furthermore, following *Newton*, the Fifth Circuit explicitly clarified that the holding in that case applied only to the limited situation where "the ALJ rejects the sole relevant treating or examining medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Consequently, when the record contains competing opinions among examining physicians, the ALJ is not required to analyze the criteria set forth in 20 C.F.R. § 404.1527(c)(2) before declining to give great weight to a treating physician's opinion. *Id.* at 467; *Lopez v. Astrue*, 854 F. Supp. 2d 415, 423 (N.D. Tex. 2012); *Nicaragua v. Colvin*, No. 3:12-CV-2109-G BN, 2013 WL 4647698, at *4 (N.D. Tex. Aug. 29, 2013).

In this case, the ALJ did not explicitly denounce the opinions of Drs. Rupa Pachigolla and Kent Weldon, Hamel's treating physicians. Instead, the ALJ found that there was "no medical support" for the limitations in their opinions except for Hamel's subjective reports. (Tr. 29). Also, the ALJ noted that these doctors' opinions were "not consistent with [Hamel's] treatment history or the improvement in her symptoms as [a] result of epidural injections." (Tr. 29). These statements convince the Court that the ALJ afforded little weight to the opinions of Drs. Pachigolla and Weldon.

Generally, this would require the ALJ to assess the § 404.1527(c)(2) factors in his dismissal of the treating physicians' opinions. *Newton*, 209 F.3d at 456. After reviewing the ALJ's decision, the Court is satisfied that the ALJ did consider, without reciting, the requisite factors in his decision. *See Jeffcoat v. Astrue*, 2010 WL 1685825, at *3. Specifically, the ALJ, demonstrating his awareness of the lengthy treating relationship **(factor 1)**, noted that Hamel

---

[3] *See also Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008).

sought treatment from Dr. Pachigolla from at least May 21, 2012, through October 3, 2012. (Tr. 28). The ALJ acknowledged his review of Dr. Weldon's impairment questionnaire (Ex. 17F) which begins with Hamel's length of treatment, June 20, 2008, through March 18, 2013. (Tr. 29, 483). Next, the ALJ demonstrated his consideration for Hamel's frequency of examination by Dr. Pachigolla and Weldon. The ALJ specifically listed four dates: May 21, 2012; June 12, 2012; July 23, 2012; and October 3, 2012, on which Hamel visited Dr. Pachigolla. (Tr. 28). Additionally, Dr. Weldon's impairment questionnaire listed his "frequency of treatment" as every two months. (Tr. 29, 483).

Then, the ALJ acknowledged the nature and extent of the treatment relationships between Hamel and Drs. Pachigolla and Weldon **(factor 2)**, by noting that these doctors were Hamel's treating physicians and detailing the findings of several of their examinations. (Tr. 28-29). Next, the ALJ commented on the lack of support for the treating physicians' opinions found in the medical record **(factor 3)**. Specifically, the ALJ found no medical support for the opinions that Hamel would need extra breaks during the workday and would miss more than three days of work per month. (Tr. 29). The ALJ pointed out that these limitations were derived from Hamel's subjective reports and not from the medical evidence. (Tr. 29). Additionally, the ALJ found that the opinions of Drs. Pachigolla and Weldon were not consisted with the record as a whole **(factor 4)**. The ALJ opined that "the limitations set forth by Drs. Pachigolla and Weldon are not consistent with the claimant's treatment history or the improvement in her symptoms as a result of epidural injections." (Tr. 29). In support, the ALJ detailed several instances where Hamel visited Dr. Pachigolla and was noted as having little or no trouble ambulating. (Tr. 28). Also, the ALJ considered reports by Dr. Christopher Pratt, another treating physician, indicating that Hamel's pain was improved, though not entirely alleviated, through epidural injections. (Tr. 28).

7

The ALJ did not discuss whether Drs. Pachigolla or Weldon are specialists in their respective fields (**factor 5**), but that is immaterial since the record lacks evidence that either of these doctors are specialists. In fact, Hamel's brief indicates that Dr. Pachigolla is a family practitioner, but offers no information concerning Dr. Weldon's practice area. (Doc. 12, p. 3 n.12). However, Dr. Pratt, a pain management specialist and Hamel's lone treating specialist, indicated that Hamel's pain was improved through epidural injections—a fact considered by the ALJ. (Tr. 28).

A review of the ALJ's opinion in conjunction with the evidence on record reveals no error in rejecting the opinions of Hamel's treating physicians. The ALJ thoroughly explained his reasons for affording less weight to the treating physicians' opinions. Further, the ALJ's findings and determinations are consistent with the evidence on record. Even so, the ALJ acknowledged—and partially discounted—the opinion of Dr. Brett Bolte, another examining physician, whose findings contradicted those of Drs. Pachigolla and Weldon. *See Qualls*, 339 F. App'x at 467 (analysis of the § 404.1527(c)(2) factors is unnecessary when confronted with competing opinions from examining physicians). Accordingly, the Court finds that the ALJ presented good cause for rejecting the opinions of Drs. Pachigolla and Weldon and properly— although perhaps unnecessarily—applied the factors in 20 C.F.R. § 404 .1527(c)(2).

**B.  The ALJ properly assessed Hamel's credibility.**

Next, Hamel contends that the ALJ conducted a faulty credibility analysis in failing to supply the requisite details when determining that Hamel's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible . . . ." (Tr. 29). When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F.

App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state his reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were

9

considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

For the objective part of the two-step analysis, the ALJ determined that Hamel did indeed have degenerative disc disease of the lumbar spine, a severe, medically-determinable impairment. (Tr. 26). Then, the ALJ opined, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 29). Next, for the subjective part of the analysis, the ALJ is required to make a determination as to the extent and credibility of the claimant's symptoms. In Hamel's case, the ALJ acknowledged his awareness of this required, two-step analysis and completed the necessary steps, albeit not in rigid form. (Tr. 27-28).

The ALJ's opinion contains evidence that he thoroughly addressed the seven factors, where applicable, enumerated in SSR 96-7p. The ALJ considered Hamel's daily activities **(1)** and noted that she helps care for her grandson. (Tr. 28). Next, the ALJ assessed the location, duration, frequency, and intensity of Hamel's symptoms **(2)** by examining Hamel's testimony and the medical observations of Drs. Pachigolla, Weldon, Pratt, Bolte, Spoor, and Kwun. (Tr. 28-29). The ALJ also evaluated any precipitating and aggravating factors **(3)** related to Hamel's impairments; specifically noting that Hamel's history of illicit drug and alcohol abuse was not material to his decision. (Tr. 29). The ALJ, assessing Hamel's medications **(4)**, considered the

10

epidural injections and the resulting improvements in Hamel's back pain. (Tr. 28-29). The ALJ did not identify any treatment, other than medication, that Hamel underwent for relief of her pain or other symptoms (5). Also, the ALJ failed to note whether Hamel utilized other measures to relieve her pain or other symptoms (6). Finally, the ALJ clearly expressed knowledge of other factors concerning Hamel's functional limitations and restrictions due to pain or other symptoms (7). This is evident in the ALJ's RFC assessment and findings. (Tr. 29-30).

Regardless of form, the Court finds that the ALJ conducted a proper credibility analysis by weighing both the objective and subjective evidence in Hamel's case. *See Prince*, 418 F. Supp. 2d at 871; *see also* 20 C.F.R. § 416.929(c)(3). Accordingly, the Court finds no error in the ALJ's credibility determination.

## IV.    CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated January *12*, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**

12